COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Overton and Senior Judge Baker
Argued at Norfolk, Virginia


ANDRA S. WILSON
                                              OPINION BY
v.        Record No. 1166-97-1      JUDGE JOSEPH E. BAKER
                                            JANUARY 26, 1999
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
                   E. Everett Bagnell, Judge

          Timothy E. Miller, Public Defender (Patricia A.
          Cannon, Senior Assistant Public Defender;
          Office of the Public Defender, on brief), for
          appellant.

          Marla Graff Decker, Assistant Attorney
          General (Mark L. Earley, Attorney General, on
          brief), for appellee.



     Andra S. Wilson (appellant) appeals from his bench trial conviction by the Circuit Court of the City of Suffolk (trial court) for driving while intoxicated in violation of Code § 18.2-266.  Appellant contends the trial court erred when it denied his motion to suppress evidence.  We agree and reverse the conviction.

     On an appeal from a trial court's ruling on a motion to suppress

>          [w]e view the evidence in the light most
>          favorable to the prevailing party, granting
>          to it all reasonable inferences fairly
>          deducible therefrom.  We review the trial
>          court's findings of historical fact only for
>          "clear error,"[1] but we review de novo the

---

[1] "'Clear error' is a term of art derived from Rule 52(a) of the Federal Rules of Civil Procedure, and applies when reviewing questions of fact" in the federal system.  Ornelas V. United States, 517 U.S. 690, 694 n.3 (1996).  In Virginia, questions of

> trial court's application of defined legal
> standards to the particular facts of a case.

Harris v. Commonwealth, 27 Va. App. 554, 561, 500 S.E.2d 257, 260
(1998).

So viewed, the evidence proved that on December 8, 1996,
Officer Sayas was instructed by his lieutenant to establish a
"security" checkpoint at the Hoffler Apartment Complex (Hoffler),
which was owned by the Suffolk Public Housing Authority (the
Authority).  The Authority requested police assistance in
response to resident complaints about trespassers and drug
dealers on the premises.  Sayas testified that he had patrolled
Hoffler previously but that this was the first time he conducted
a checkpoint there.

Sayas and another officer established the checkpoint just
inside the entrance to Hoffler.  They were told to stop all
persons, whether traveling in a vehicle or on foot, entering the
complex between midnight and 2:00 a.m.  The officers were to
ascertain the identity of each person entering the complex and
that person's purpose for being there.  Appellant, who was
driving an automobile, was stopped at the checkpoint at
approximately 1:35 a.m.  Sayas arrested appellant after
determining that appellant was intoxicated.  Appellant stipulated
at trial that the evidence was sufficient to convict him of

fact are binding on appeal unless "plainly wrong."  Quantum Dev.
Co. v. Luckett, 242 Va. 159, 161, 409 S.E.2d 121, 122 (1991);
Naulty v. Commonwealth, 2 Va. App. 523, 527, 346 S.E.2d 540, 542
(1986).

driving while intoxicated.

"[S]topping a motor vehicle and detaining its operator at a roadblock [or checkpoint] constitutes a 'seizure' within the meaning of the Fourth Amendment." Crandol v. City of Newport News, 238 Va. 697, 700, 386 S.E.2d 113, 114 (1989). If the stop is made without probable cause or reasonable suspicion of criminal activity, then "the seizure must be carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." Brown v. Texas, 443 U.S. 47, 51 (1979).

To determine whether a checkpoint stop is constitutionally valid, we apply the balancing test established in Brown. See Lowe v. Commonwealth, 230 Va. 346, 350, 337 S.E.2d 273, 276 (1985). The Brown test involves a weighing of three criteria: "(1) the gravity of the public concerns served by the seizure, (2) the degree to which the seizure advances the public interest, and (3) the severity of the interference with individual liberty." Id. "[A] 'central concern' in balancing the foregoing competing considerations has been to make certain that 'an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field.'" Id. (quoting Brown, 443 U.S. at 51).

Applying this test, the Supreme Court of Virginia in Lowe upheld the constitutionality of a Charlottesville roadblock designed to combat drunk driving. See id. at 352–53, 337 S.E.2d at 277. The Court noted that the police had "analyzed the

- 3 -

locations within the city where there had been drunk-driving arrests and alcohol-related accidents in order to determine the places where the checkpoints should be established."  Id. at 351, 337 S.E.2d at 276 (emphasis added).  In Sheppard v. Commonwealth, 25 Va. App. 527, 489 S.E.2d 714 (1997), aff'd on reh'g en banc, 27 Va. App. 319, 498 S.E.2d 464 (1998),[2] the officer who selected the roadcheck site testified that the police were actively engaged fighting drug trafficking in the area where the roadblock was established.  See id. at 533, 489 S.E.2d at 717-18 (Coleman, J., dissenting).

The United States Supreme Court has stated that the second prong of the Brown test

> was not meant to transfer from politically accountable officials to the courts the decision as to which among reasonable alternative law enforcement techniques should be employed to deal with a serious public danger. . . .  [F]or purposes of Fourth Amendment analysis, the choice among such reasonable alternatives remains with the governmental officials who have a unique understanding of, and responsibility for, limited public resources, including a finite number of police officers.

Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 453-54 (1990).  Nevertheless, the Commonwealth must present some evidence establishing that the method employed will be an effective tool for addressing the public concern involved.  See Galberth v. United States, 590 A.2d 990, 999 (D.C. App. 1991)

---

[2]The conviction was affirmed without opinion by an evenly divided court.

- 4 -

(holding that the challenged roadblock was unconstitutional, in part, because "there [was] no empirical evidence that the roadblock technique itself effectively promoted the government's interest in deterring drug crimes"); Nieto v. State, 857 S.W.2d 149, 152-53 (Tex. App. 1993) (finding that a checkpoint at a subdivision entrance was unconstitutional where there was no evidence that targeted persons would be entering the subdivision); Shankle v. Texas City, 885 F. Supp. 996, 1002 (S.D. Tex. 1995) ("Prior to implementing such intrusive methods of law enforcement, [authorities] should attempt to gather some empirical evidence that such methods will, in fact, be effective.").  Cf. Maxwell v. City of New York, 102 F.3d 664, 667 (2d Cir. 1996) (noting that "checkpoints similar to the one here had been effectively used in the past by the New York City Police"), cert. denied, 118 S. Ct. 57 (1997); State v. Damask, 936 S.W.2d 565, 573 (Mo. 1996) (en banc) (finding that the checkpoint satisfied the second prong of Brown where it was modeled after a successful checkpoint employed in another jurisdiction, and where the highway on which the checkpoint was established was "known as a popular route for the transport of narcotics").

Assuming that combatting drug dealing satisfies the "gravity of the public concerns served" prong of the Brown balancing test, the Commonwealth presented insufficient evidence proving that the security checkpoint at Hoffler effectively addressed this

concern.  The only evidence presented regarding the circumstances leading to the checkpoint's establishment was that Hoffler residents had complained to the Authority about trespassers and drug dealers on the property.  The Commonwealth, however, presented no empirical evidence that there was a problem with drug dealers at Hoffler.  Cf. Lowe, 230 Va. at 351, 337 S.E.2d at 276.  There was no evidence that any drug-related arrests were made as a result of the checkpoint that night.  Cf. Sitz, 496 U.S. at 454-55 (noting the number of drunk drivers arrested as a result of the challenged roadblock).  Although Sayas testified that he had previously patrolled at Hoffler, there was no evidence that he had ever made any arrests there for drug dealing.  There was also no evidence that security checkpoints like this one are an effective tool in combatting drug dealing.

In the absence of sufficient evidence to satisfy the second prong of the Brown test, we hold that the interference with individual liberty inherent in this checkpoint outweighed the public interest in establishing it.[3]  Accordingly, the judgment of the trial court is reversed and the case is remanded for retrial, if the Commonwealth be so advised.

Reversed and remanded.

---

[3]Because appellant's detention at the checkpoint was unlawful, the trial court should have suppressed all evidence seized as a result of the stop.  See Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 659 (1989).